UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LEONIDAS DE JESUS PEREZ-
DOMINGUEZ,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

No. 3:11-cv-1501 (SRU)

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

    The petitioner, Leonidas De Jesus Perez-Dominguez ("Perez-Dominguez" or the "petitioner"), appearing *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  As grounds for his motion, the petitioner alleges that his trial lawyer provided ineffective assistance of counsel, in violation of his Sixth Amendment rights.  For the reasons that follow, the motion (doc. # 1) is DENIED.

**I.     Background**

    On December 7, 2006, a federal grand jury returned a superseding indictment charging Perez-Dominguez and seventeen other individuals with conspiracy to possess with intent to distribute 1,000 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  If convicted, Perez-Dominguez faced a maximum sentence of life imprisonment and a mandatory-minimum sentence of 120 months.

    On January 2, 2008, Perez-Dominguez pleaded guilty to Count One of the superseding indictment.  At the time of his plea, the petitioner entered into a written plea agreement, which contained a stipulated Guidelines range of 168-210 months' imprisonment.  *See* Plea Agreement at 3 (3:06-cr-272 (SRU), doc. # 508).

    Following the plea hearing, the United States Probation Office compiled a Pre-Sentence

Investigation Report ("PSR"), which estimated that Perez-Dominguez supplied at least thirty kilograms of heroin to the criminal organization referenced in the superseding indictment (the "organization"), and that his involvement dated back to 2002.  *See* PSR ¶ 37.  The PSR, relying on law enforcement information and wiretap evidence, also indicated that Perez-Dominguez was one of the "main sources of supply" for the organization.  *Id.* ¶ 36.

Perez-Dominguez had no prior convictions, but the PSR contained a description of an incident that occurred on May 28, 1999.  On that date, state troopers stopped a vehicle in which Perez-Dominguez was a passenger on suspicion that the vehicle and its occupants were connected to a recent robbery.  *See* PSR ¶ 52.  After the K-9 unit signaled a "hit," the troopers searched the vehicle.  *Id.*  Although no narcotics were found, the troopers discovered two hidden compartments.  One of the hidden compartments—located under the passenger's seat—housed a loaded firearm.  *Id.*

According to the PSR, when the troopers questioned Perez-Dominguez, "he repeatedly told arresting authorities that he was lawfully in the United States *when in fact he was not*."  *Id.* (emphasis added).  The italicized portion of that statement, however, turned out to be wholly inaccurate:  as indicated elsewhere in the PSR, Perez-Dominguez had been a lawful permanent resident since the early 1990s.  *See id.* ¶ 62.  Thus, to the extent the petitioner claimed to be a lawful resident in May 1999, he was telling the truth.

On March 25, 2008, Perez-Dominguez appeared for sentencing before U.S. District Judge Alan H. Nevas (now retired).  During the hearing, the government urged the court to impose a Guideline sentence of at least 168 months' imprisonment, arguing that evidence obtained from, *inter alia*, wiretaps and cooperating witnesses confirmed that the petitioner was "the source of supply of one of the most prolific drug organizations in Bridgeport."  Tr. of

Sentencing Hrg. at 17-18 (3:06-cr-272, doc. # 572).  Perez-Dominguez's counsel, Attorney Evan J. Prieston, countered that several factors under 18 U.S.C. § 3553(a) warranted a downward departure, but he did not otherwise challenge any of the information contained in the PSR, including the stipulated Guidelines calculation.  *See id.* at 6-7.  Judge Nevas, therefore, adopted the calculation as set forth in the PSR and the written plea agreement, setting the Guidelines range at 168-210 months' imprisonment.

Judge Nevas then proceeded to question the parties about the May 1999 incident, as described in Paragraph 52 of the PSR.  During that exchange, Judge Nevas stated that, based on his prior experience with drug organizations, he found it "troubling" that the petitioner was traveling in a vehicle with hidden compartments and a loaded gun, "which would suggest to the Court that as far back as 1999, he was engaged in the drug trade."  *Id.* at 23.  In making that determination, Judge Nevas also briefly mentioned that the PSR indicated that Perez-Dominguez had informed the troopers who stopped the vehicle that "he was lawfully in the United States when, of course, he was not."  *Id.* at 19.

Following a short recess, the court sentenced the petitioner to 168 months' imprisonment, the bottom of the Guidelines range, and five years' supervised release.  Judge Nevas explained that his sentence was based on the seriousness of the offense, the amount of drugs involved, and the harm to the community.  *Id.* at 24.  Moreover, Judge Nevas noted that he had "considered a non-guideline sentence, but . . . believe[d] that there [we]re compelling reasons not to depart downward . . . ."  *Id.* at 25.

Perez-Dominguez's counsel filed a timely appeal, which challenged, *inter alia*, the district court's factual findings concerning the May 1999 incident, including the inference that Perez-Dominguez was involved with the drug trade since 1999.  The Second Circuit, however,

rejected all of the petitioner's arguments and affirmed the judgment of conviction on September 21, 2010. *See United States v. Dominguez*, 393 F. App'x 773, 776 (2d Cir. 2010). Perez-Dominguez's conviction became final ninety days later, when the time period for filing a petition for certiorari expired. *See Clay v. United States*, 537 U.S. 522, 532 (2003).

On September 28, 2011, Perez-Dominguez filed the instant habeas petition, claiming that his former counsel, Attorney Prieston, was constitutionally ineffective because he failed to properly investigate and/or object to certain information contained in the PSR and presented at the sentencing hearing. Thereafter, on October 17, 2012, I granted Perez-Dominguez's motion to amend his petition to assert an additional ineffectiveness claim based on his counsel's alleged failure to properly advise him of the consequences of his guilty plea.

## II.      Standard of Review

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Under the Sixth Amendment to the United States Constitution, a criminal defendant is entitled to effective assistance of counsel at trial and on appeal. *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006). Generally speaking, petitioners who have failed to present a claim on direct appeal may not raise that claim on collateral review absent a showing of cause and prejudice. *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010). A petitioner may raise a claim of ineffective assistance, however, even if that claim was not raised previously at trial or on appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Yick Man Mui*, 614 F.3d at 57.

To succeed on his ineffective assistance claims, Perez-Dominguez must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2)

- 4 -

"that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984).  To satisfy the first prong, "the defendant must show that counsel's performance was 'outside the wide range of professionally competent assistance.'" *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997) (quoting *Strickland*, 466 U.S. at 690).  To satisfy the second prong, "the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).  A petitioner must meet both prongs to demonstrate ineffective assistance of counsel, and if the petitioner fails to satisfy one prong, the court need not consider the other.  *Strickland*, 466 U.S. at 667.  "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

**III.    Discussion**

Construing his *pro-se* petition liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Perez-Dominguez claims that his trial lawyer was constitutionally ineffective in three different ways:  (1) by failing to properly advise him of the consequences of his guilty plea; (2) by failing to investigate and/or object to information contained in the PSR concerning the May 1999 incident; and (3) by failing to object to the government's "inflammatory" statements at the sentencing hearing.  I address each claim individually.

        A.    <u>Failure to Advise of the Consequences of Pleading Guilty</u>

First, the petitioner argues that his lawyer failed to advise him of the consequences of his plea. Specifically, he claims that his lawyer misled him by promising that, if he pleaded guilty, he would be sentenced to no more than the 120-month mandatory minimum associated with his offense of conviction.  That, in essence, is a claim that ineffective assistance of counsel rendered his plea involuntary.

"Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea . . . to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). A claim of ineffective assistance challenging a guilty plea is assessed under *Strickland*'s familiar two-pronged standard. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). Thus, to succeed on his claim, the petitioner must demonstrate (1) that his counsel's performance was objectively unreasonable, and (2) that he was prejudiced as a result. *Strickland*, 466 U.S. at 688. Prejudice, in this context, requires a showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999) (evaluating the "likelihood that [the defendant] would have accepted the plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges under the plea bargain and upon conviction after trial").

In this case, however, I need not determine whether, under the first prong of *Strickland*, counsel did, in fact, promise Perez-Dominguez a lesser sentence. Even if he did, and even if that promise was objectively unreasonable, under the second prong of *Strickland*, the petitioner has failed to prove—and, indeed, cannot prove—that he was prejudiced by counsel's performance.

"When a petitioner claims his counsel 'mislead him as to the possible sentence which might result from [his] plea,' he cannot overcome *Strickland*'s prejudice prong if he was made aware of 'the actual sentencing possibilities' and entered into the plea agreement anyway." *Shah v. United States*, No. 12-cv-6366 (WHP), 2013 WL 1641167, at * 4 (S.D.N.Y. Apr. 16, 2013) (quoting *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)). The plea agreement at issue

here provided for a Guidelines range of 168-210 months' imprisonment and expressly stated that Perez-Dominguez "underst[ood] that the Court is not bound by this agreement on the Guideline and fine ranges" and "that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all parties."  Plea Agreement at 7.  Moreover, at the plea hearing, Magistrate Judge William I. Garfinkel thoroughly canvassed the petitioner about the terms of the plea agreement, ensuring that Perez-Dominguez fully understood and voluntarily agreed to the stipulated range of 168-210 months' imprisonment.  *See* Tr. of Change of Plea Hrg. at 18-22 (3:06-cr-272, doc. # 829).  Indeed, in sworn statements during his plea colloquy, Perez-Dominguez specifically acknowledged the sentence he faced and that no other promises had been made to induce his plea.  *See id.* at 21-22.

Thus, the record reflects that, at the time of his guilty plea, Perez-Dominguez was made fully aware of his potential sentence and yet "entered into the plea agreement anyway."  *Shah*, 2013 WL 1641167, at * 4.  For that reason, the petitioner cannot establish that "but for" counsel's allegedly deficient performance, he would not have pleaded guilty.  *See Ventura*, 957 F.2d at 1058.  I therefore reject this basis for the motion.

      B.     <u>Failure to Investigate and/or Object to Factual Statements in the PSR</u>

Next, the petitioner claims that his counsel was ineffective by failing to investigate and/or object to certain factual statements contained in the PSR—namely, the facts surrounding the May 1999 incident and the erroneous report that Perez-Dominguez lied about his immigration status.

Here again, assuming *arguendo* that counsel's performance was objectively unreasonable, the petitioner has not—and cannot—demonstrate prejudice.  Even if his counsel should have conducted a more thorough investigation of the May 1999 vehicular stop, the

petitioner has made no showing that further investigation would have turned up exculpatory or mitigating evidence affecting the court's determinations of relevant conduct.  On the contrary, the petitioner has never denied that he was present in the car on the date in question, or that the car was equipped with hidden compartments.  Thus, the core factual predicate for the court's determination that Perez-Dominguez had a history with the drug trade dating back to 1999[1] is not in dispute.  Under those circumstances, it cannot be said that, "but for" counsel's failure to investigate, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.

Moreover, to the extent the PSR inaccurately reported that Perez-Dominguez was unlawfully in the United States in 1999 or that he otherwise misled the authorities about his immigration status, the petitioner has failed to show how that inaccuracy prejudiced his case.  As the Second Circuit previously determined on direct appeal, "nothing in the record indicates that Perez Dominguez's immigration status materially affected the district court's sentence," *Dominguez*, 393 F. App'x at 777, and my review of the sentencing transcript supports that view.  Thus, even if counsel's failure to object was objectively unreasonable, the petitioner cannot satisfy *Strickland*'s prejudice prong.  Accordingly, I reject this basis for the motion as well.

---

[1] To the extent Perez-Dominguez is attempting to challenge the sufficiency of the evidence supporting his involvement with the drug trade since 1999, that claim has already been squarely rejected by the Second Circuit on direct appeal.  *See Dominguez*, 393 F. App'x at 777 ("[W]e identify no error, much less plain error, in the district court's inferring from the presence of hidden compartments in the vehicle in which Perez Dominguez was stopped that he then likely had some involvement in drug trafficking. . . .  The district court's observation. . . finds ample support in our cases.") (internal quotations and citations omitted).  Thus, the petitioner is procedurally barred from relitigating that issue here.  *See United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997) ("A § 2255 motion may not relitigate issues that were raised and considered on direct appeal.").

### C. Failure to Object to "Inflammatory" Statements

Lastly, the petitioner claims that his counsel was ineffective by failing to object when the government made "inflammatory" statements during the sentencing hearing. Specifically, he argues that the government mischaracterized him as "the source" of the organization's heroin supply when, in fact, the superseding indictment identified a number of different suppliers.

This claim, too, founders on *Strickland*'s prejudice prong. Nothing in the record indicates that the District Court sentenced Perez-Dominguez based on the mistaken belief that he was the organization's *only* source of heroin. On the contrary, when he pronounced the sentence in this case—a sentence at the very bottom of the stipulated Guidelines range—Judge Nevas correctly identified the petitioner as "*a* source of supply for a major drug dealer in this area." Tr. of Sentencing Hrg. at 24. Thus, although the government argued that Perez-Dominguez was "the source of supply" of heroin for the organization, Judge Nevas correctly understood that Perez-Dominguez was but one of several sources.

## IV. Conclusion

In sum, the petitioner's motion to vacate, set aside, or correct his sentence (doc. #1) is DENIED. Because the record in this case conclusively shows that the petitioner is not entitled to relief, it is not necessary to hold an evidentiary hearing. *See* 28 U.S.C. § 2255(b); *Contino v. United States*, 535 F.3d 124, 128 (2d Cir. 2008) (stating that a district court may decline to hold a hearing where the petitioner does not "demonstrate a colorable claim of ineffective assistance"). Moreover, a certificate of appealability will not issue because the petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner has not demonstrated that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002)

(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation omitted)).  The clerk shall close the file.

       It is so ordered.

       Dated at Bridgeport, Connecticut, this 4th day of September 2013.

                                                 /s/ Stefan R. Underhill
                                               Stefan R. Underhill
                                               United States District Judge